[Crim. No. 1338.   Second Appellate District, Division Two.—November 5, 1926.]

## THE PEOPLE, Respondent, v. FRED W. KELLER, Appellant.

[1] Banks and Banking — Debtor and Creditor — Payment of Check—Segregation of Funds—Title.—Money placed on general deposit with a bank is, while on deposit, the property of the bank, and during its deposit the relation between the bank and the depositor is that of debtor and creditor; but the acceptance of a check, presented through a forwarding bank, the surrender of the instrument, the payment of the money to the forwarding bank, and the entry of the transaction upon the books of the depository bank constitutes a segregation or separation of the amount of dollars expressed in the check from the general mass of money in the bank as the portion owing by it to the depositor, and at the very moment the money represented by the check is thus separated from the general mass of money in the bank the title to the funds so segregated passes from the bank to the depositor at least for an instant of time.

[2] Criminal Law—Embezzlement—Drawing Check on Corporation Account — Pleading.—Where the vice-president and general manager of a corporation, after placing moneys of the corporation on general deposit with a bank in an account in which checks drawn are to be honored only when signed by himself as vice-president of said corporation, draws a check against said account and delivers it to the payee therein named in payment of

a personal debt, and such check is in due course, and upon presentation through a forwarding bank, accepted by the depository bank and the amount thereof paid by it to the forwarding bank, a conversion of the funds of the corporation takes place; and such officer is properly charged with the embezzlement of money, and not with the embezzlement of a check.

[3] ID.—VENUE.—In such prosecution for embezzlement, the venue is properly laid in the county in which the depository bank was located, notwithstanding the offense was commenced and the instrumentalities employed by defendant to bring about the payment of the money by said bank were set in motion by him in another county.

[4] ID.—USE OF INNOCENT AGENT—ABSENCE OF DEFENDANT.—The fact that the withdrawal of the money from the depository bank was done by the hand of an innocent agent, the forwarding bank, and defendant was not present at the time and place of the offense, did not free defendant from liability for punishment for the crime of embezzlement.

[5] ID.—DEMAND AND REFUSAL—OTHER PROOF OF FELONIOUS CONVERSION.—Proof of demand and refusal is not essential to the consummation and establishment of embezzlement where there is other proof sufficient to establish the fraudulent and felonious conversion of the money.

---

(1) 7 C. J., p. 642, n. 2, p. 681, n. 68 New.    (2) 20 C. J., p. 427, n. 24, p. 478, n. 97.    (3) 16 C. J., p. 189, n. 62, p. 190, n. 68, p. 195, n. 51, p. 196, n. 68 New.    (4) 16 C. J., p. 124, n. 31.    (5) 20 C. J., p. 429, n. 31.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. T. Clark for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

CRAIG, J.—Immediately prior to his appointment to the office of associate justice of the supreme court of this state,

---

4.  See 7 Cal. Jur. 888.
5.  See 10 Cal. Jur. 265; 9 R. C. L. 1276.

the opinion which follows was begun but not completed by Honorable Frank G. Finlayson, then presiding justice of this division of the district court of appeal.

Defendant was convicted in the superior court for Orange County upon an information charging him with the embezzlement of certain money, the property of the California Industrial Finance Corporation. He was found guilty of the embezzlement of $150, and now appeals from the judgment and from an order denying his motion for a new trial.

Briefly, the outstanding facts, in so far as they are material in the illumination of the points to be discussed, run thus: Defendant was vice-president and general manager of the California Industrial Finance Corporation—hereafter for brevity referred to as the Finance Corporation. That corporation had its principal place of business in the city of Los Angeles. On October 10, 1923, defendant, in the course of his employment as such vice-president and general manager, opened an account on behalf of his principal with the First National Bank of Santa Ana—a banking institution doing business at the city of Santa Ana, in Orange County, and hereafter for brevity referred to as the Santa Ana Bank. At the same time defendant placed on general deposit with that bank the sum of $1,000, the property of the Finance Corporation. The assistant cashier of the bank testified that the account ran in the name of the "California Industrial Finance Corporation, Incorporated, F. W. Keller, V. P.," and that checks drawn against the account were to be honored only when signed by defendant as vice-president of the Finance Corporation. On October 13, 1923, defendant drew a check on the Santa Ana Bank payable to the order of one Joseph Bixler, a resident of Los Angeles. This check was signed by defendant as follows: "California Industrial Finance Corp., F. W. Keller, V. J." It was for the embezzlement of the money represented by this instrument that defendant was convicted. The signing of the check and its delivery to the payee took place in Los Angeles County. The sum called for by this negotiable instrument was applied to defendant's personal use, the check having been given by defendant to Bixler in payment of a debt owing by the former to the latter. Bixler indorsed the check and deposited it with a Los Angeles bank. In due course of business the instrument was forwarded by a Los Angeles bank to the

Santa Ana Bank for payment, and was there honored and paid by the drawee bank to the forwarding bank on October 17, 1923. Thereupon the Santa Ana Bank charged the account of the Finance Corporation with the amount of the check.

The principal points raised by the appellant are: (1) That there is a fatal variance in the proof, in that the information charges the embezzlement of money and the evidence shows the embezzlement of a check; (2) that the crime, if any was committed, was perpetrated in Los Angeles County, and not in Orange County, where the venue was laid.

[1] We are satisfied that the proof shows an embezzlement of money, as alleged in the information. It of course is conceded by the attorney-general, as indeed it must be, that the money of the Finance Corporation which appellant placed on general deposit with the Santa Ana Bank was, while on deposit, the property of that bank, and that during its deposit the relation between the bank and the depositor, appellant's principal, was that of debtor and creditor. When, however, the money was paid on the check to the forwarding bank, it became, for an instant of time at least, however short, the property of the depositor—the Finance Corporation. The acceptance of the check by the Santa Ana Bank, the surrender of the instrument to it, the payment of the money to the forwarding bank and the entry of the transaction upon the books of the Santa Ana Bank constituted a segregation or separation of the amount of dollars expressed in the check from the general mass of money in the bank as the portion owing by it to appellant's principal. At the very moment the money represented by the check was thus separated from the general mass of money in the Santa Ana Bank the title to the funds so segregated passed from the bank to appellant's principal at least for an instant of time. (*Bartley* v. *State*, 53 Neb. 310 [73 N. W. 744].)

[2] Appellant, when he drew the check and delivered it to Bixler, must have intended that the $150 which the instrument represented would be paid by the Santa Ana Bank to someone—to Bixler himself, as the payee, or to some agent duly authorized by Bixler to collect it, or to some indorsee or assignee of the instrument. In other words, appellant unquestionably intended to, and did, use innocent agents

as the instrumentalities through which to effect the payment of his principal's money in satisfaction of a personal debt owing by him to the payee named in the check. When, therefore, the money was paid on the check by the Santa Ana Bank to the forwarding bank there was a conversion to appellant's use of money which at that instant lawfully belonged to the Finance Corporation. Without doubt, if appellant in person had withdrawn from his principal's account with the Santa Ana Bank the sum of $150 in actual cash and then had paid it to Bixler in satisfaction of a personal obligation, the proof would have been sufficient to sustain a charge of embezzling the money. As we view it, the legal effect of the transaction, as it actually occurred, is not materially different. The practical result was that when the $150 was paid by the Santa Ana Bank appellant's principal had its account with that bank decreased by the amount of the check, and it was just as much a conversion of that $150 by appellant as it would have been had he gone to the bank himself, withdrawn the money and paid it to Bixler. It has been held, under circumstances analogous to those disclosed here, that an embezzlement of money is accomplished by the drawing of a check upon the bank where such money is deposited. (*Bartley* v. *State, supra; State* v. *Mispagel,* 207 Mo. 557 [106 S. W. 513]; *State* v. *Krug,* 12 Wash. 288 [41 Pac. 126]; *State* v. *Hoshor,* 26 Wash. 643 [67 Pac. 386]; *Territory* v. *Meyer,* 3 Ariz. 199 [24 Pac. 183]; *Ex parte Hedley,* 31 Cal. 108.) For these reasons the first point raised by appellant must be resolved against him.

[3]  There is no merit in appellant's claim that the venue was improperly laid in Orange County. It is true that the instrumentalities employed by appellant to bring about the payment of the money by the Santa Ana Bank were set in motion by him in Los Angeles County. And it doubtless is true that when delivering the check to Bixler at Los Angeles he then and there fully intended that the sum of money represented by the check should be misappropriated in the manner already described. But at the time appellant did not have possession of the money. His fraudulent and felonious intent was not coupled with possession. At the time when he drew the check the money was on deposit with and was the property of the Santa Ana Bank, between whom and appellant's principal the relation of debtor and creditor existed,

It is not necessary to decide whether appellant could have been prosecuted in Los Angeles County for the embezzlement of the money. It is clear that if that offense may be deemed to have been commenced in Los Angeles County its consummation was effected in Orange County when the money was paid on the check by the Santa Ana Bank. Under such circumstances the prosecution was properly begun in Orange County. Section 786 of the Penal Code provides: "When property taken in one county by burglary, robbery, larceny, or *embezzlement*, has been brought into another, the jurisdiction of the offense is in either county. But if at any time before the conviction of the defendant in the latter, he is indicted in the former county, the sheriff of the latter county must, upon demand, deliver him to the sheriff of the former."

To the same effect is the more general provision of the law contained in section 781 of the Penal Code, which reads as follows: "When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

[4] It makes no difference that appellant was not present in person in Orange County when the Santa Ana Bank paid the money on the check. The withdrawal of the money from the bank was done by the hand of an innocent agent, but it was the mind of appellant which caused that hand to reach out and to receive the proceeds of the check. It is well settled that one who causes a crime to be committed through the instrumentality of an innocent agent is the principal in the crime and punishable accordingly, although he was not present at the time and place of the offense. (*State* v. *Barnett*, 15 Or. 77 [14 Pac. 737] ; *State* v. *Mispagel, supra;* 16 Cor. Jur. 124.) "In judgment of the law," says the court in *State* v. *Barnett*, "he who procures the act to be done is present at its commission, and must not be permitted to deny that he personally committed it at the place where it was done. In such case the innocent agent is not an offender; but the employer, though absent, is the principal offender, and is deemed to have been personally present."

[5] There is no merit in the contention that embezzlement of the money could not take place without a demand

for its return having been previously made by the Finance Corporation. It is true that a demand, followed by a refusal, is sometimes indispensable evidence of embezzlement; but it is the fraudulent and felonious conversion of the money or other property which constitutes the offense, and that may often be proved without a demand. Proof of demand and refusal is not essential to the consummation and establishment of embezzlement where, as here, there is other proof sufficient to establish the fraudulent and felonious conversion of the money. (*People* v. *Hatch*, 163 Cal. 368 [125 Pac. 907]; *People* v. *Crane*, 34 Cal. App. 599 [168 Pac. 377].)

Complaint is made of certain instructions given by the court and of the rejection of others requested by appellant. It would serve no useful purpose to give to these assignments particular notice. It is enough to say that we have taken the pains carefully to examine all of them, and have found nothing in the record that is detrimental to appellant's substantial rights.

The judgment and the order appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.