[Crim. No. 5662. Second Dist., Div. Two. Mar. 19, 1957.]

THE PEOPLE, Respondent, v. LUIGI DiMICHELE, Appellant.

Luigi DiMichele, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was charged in two informations with nine counts of forgery of fictitious name, a violation of section 470, Penal Code, by fraudulently and feloniously uttering certain fictitious checks with intent to defraud certain named persons.

In the third information defendant, together with one Mary Amezcua, was charged with five additional such counts. In each information defendant was charged with a prior conviction of grand theft, a felony. This charge was made with respect to each of the several counts. Defendant admitted the prior conviction. The three informations were consolidated for trial. The jury found defendant guilty as charged on all counts. He was sentenced to the state prison, sentences in two of the cases to run concurrently with each other and consecutively with the sentence in the other case. Defendant appeals from the judgment of conviction in all three cases.

In March, 1954, defendant requested Mrs. Mary Amezcua to cash checks under a fictitious name. At his suggestion, Mrs. Amezcua obtained a nurse's registration card under the name of Frances Varga; he assisted her in obtaining the card by driving her to a certain address on Olympic Boulevard in Los Angeles. Mrs. Amezcua was not a nurse. She never used the name Frances Varga other than to pass the checks here in question. It was agreed between defendant and Mrs. Amezcua that he would receive two-thirds and she one-third of the money realized from the checks.

Defendant furnished Mrs. Amezcua with five checks, each in the amount of $46.24, drawn on the Beverly-Vermont Branch of the Bank of America, signed with the name "J. McLaughlin" and made payable to Frances Varga. This bank did not have an account under the name of J. McLaughlin. In the opinion of a handwriting expert, the handwriting on the checks and on an exemplar made by defendant was that of the same person. Mrs. Amezcua passed the five checks at five different places of business, using the name Frances Varga and the nurse's registration card, and received either cash or merchandise therefor. In due course, the checks were dishonored by the bank. Mrs. Amezcua gave the money received to defendant and he returned one-third to her.

In July, 1956, defendant and a Mrs. King undertook a similar venture. Defendant furnished her with 100 identical checks; they were each for $57.65, drawn on the Highland-Hollywood Branch of the Security-First National Bank, signed with the name "Dr. Allen A. Corman" and made payable to Alice Burns. Defendant informed Mrs. King that the writing on the face of the checks was his.

There was no account at this bank in the name of Dr. Allen A. Corman. It was proved that the writing on an exemplar made by defendant and that on the checks given to Mrs. King were made by the same person.

Defendant provided Mrs. King with instructions as to cashing the checks. She was directed to cash them on Friday, Saturday and Monday, "because the checks started coming back on the third day." She was advised to obtain a false address, and defendant went with her when she chose an address on Palmer Street in Los Angeles. Also, in cashing the checks, Mrs. King was instructed to buy just a little merchandise and was to try to obtain as much in cash from the checks as was possible.

Defendant suggested that Mrs. King use the name "Alice Burns" as "A's and B's are easier to make on checks and that the name Alice Burns sounds good." Mrs. King, at defendant's direction, obtained a temporary's driver's license under the name of Alice Burns, and he went with her to show her how to obtain the license without being fingerprinted. Also defendant showed her where to obtain a social security card under the name of Alice Burns. Defendant advised Mrs. King with respect to how she was to dress while cashing checks: "that a person if they are a nurse, people have more faith in you, they trust you a little more." Mrs. King was not a nurse and never used the name Alice Burns before this incident.

Mrs. King proceeded to cash the checks at various business establishments. She wore a nurse's uniform and used identification bearing the name Alice Burns. The checks were, of course, dishonored by the bank. Mrs. King shared with defendant the money obtained from cashing these checks. At the conclusion of her activities, Mrs. King returned all uncashed checks to defendant, who destroyed them.

█ Defendant argues that it was illegal to use his prior felony conviction in all the counts charged against him because this had the effect of placing him in double jeopardy. This argument is not sound because "A prior conviction is not a part of the offense charged. . . ." (*People* v. *Stoddard*, 85 Cal.App.2d 130, 138 [192 P.2d 472].) █ The purpose of alleging a prior conviction is not to try the defendant again for the former offense but rather "to advise the 'Board of Prison Terms and Paroles' of the fact to enable them to determine the proper term of punishment in the event of conviction." (*People* v. *Ashcraft*, 138 Cal.App.2d 820, 825-826 [292 P.2d 676].) █ Nor was it error, as defendant contends, that the same prior conviction was alleged against him in each count of the three informations. (Pen. Code, §§ 969, 969a; *People* v. *Youders*, 96 Cal.App.2d 562, 571 [215 P.2d 743]; *People* v. *Ashcraft, supra*, p. 826.)

█ Defendant vainly argues that his sentence was illegal because the trial court ordered his sentence on certain counts to run consecutively with that imposed on other counts. Penal Code, section 969, gives the trial court the power to determine whether sentences shall run concurrently or consecutively where a defendant is convicted on two or more offenses. In *People* v. *White*, 100 Cal.App.2d 836, 840 [224 P.2d 868], the

defendant was convicted on six felony counts, all of which were of a similar nature and all closely connected in point of time. The trial court meted out six consecutive sentences. It was held that determination of whether several sentences should run concurrently or consecutively is vested in the trial court by law and its determination may not be disturbed on appeal unless abuse of discretion is clearly shown. It was further held that the imposition of six consecutive sentences was not an abuse of discretion where the defendant had a prior conviction.

Defendant further contends that Mrs. Amezcua and Mrs. King were coached by the prosecution and gave perjured testimony under threats of punishment if they did not testify as desired and promises of leniency if they did so testify. These contentions were suggested to the jury by the defendant in his cross-examination of these witnesses. Both denied they were testifying as a result of threats of punishment or promises of reward. Questions as to the credibility of a witness and the weight to be given his testimony are for the jury and the trial court. (*People* v. *DePaula,* 43 Cal.2d 643, 649 [276 P.2d 600] ; *People* v. *Tierney,* 131 Cal.App.2d 762, 763 [281 P.2d 259].)

Defendant contends that he was not given a fair and impartial trial. He bases this contention on the fact that the trial judge generally ruled in favor of the prosecution and adversely to the defense during the course of the trial. An examination of the transcript clearly indicates that the rulings were correct; in fact, the trial judge took great pains to see that the defendant had a fair and impartial trial.

Defendant's final contention is that the prosecution failed to assist him in obtaining evidence to prove his innocence. He particularly complains that his repeated requests to the prosecution to secure a certain checkwriting machine were denied. The record, however, fails to disclose that he made any such request. Furthermore, it is difficult to see how the production of this machine would have assisted defendant's case since the handwriting on the checks was identified as defendant's by handwriting experts. The record indicates that the prosecution was entirely fair to the defendant.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.